[Cite as *Southeastern Natural Gas Co. v. Vititoe Constr., Inc.*, 2011-Ohio-1844.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SOUTHEASTERN NATURAL GAS COMPANY | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| | : | Hon. Julie A. Edwards, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 10CAE070053 |
| VITITOE CONSTRUCTION, INC. | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Court of Common Pleas,
                               Case No. 08CVH091211


JUDGMENT:                      Affirmed


DATE OF JUDGMENT ENTRY:        April 14, 2011


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN K. KELLER                          CRAIG G. PELINI
JOHN M. KUHL                            RAYMOND C. MUELLER
52 East Gay Street                      8040 Cleveland Avenue, NW
P.O. Box 1008                           Suite 400
Columbus, OH  43216-1008                North Canton, OH  44720

                                        For Amicus Curiae Ohio Gas Association

                                        ANDREW J. SONDERMAN
                                        175 South 3rd Street
                                        Suite 900
                                        Columbus, OH  43215

*Farmer, P.J.*

{¶1}    On November 19, 2007, appellant, Vititoe Construction, Inc., was performing construction work on a public improvement project when a trackhoe operator struck and damaged an underground gas line owned by appellee, Southwestern Natural Gas Company.

{¶2}    On September 10, 2008, appellee filed a complaint against appellant for negligence.  A bench trial commenced on May 25, 2010.  By judgment entry filed June 18, 2010, the trial court found in favor of appellee as against appellant in the amount of $123,862.73, finding appellant had actual notice of the gas line and was responsible for the damage under R.C. 153.64.

{¶3}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}    "THE TRIAL COURT ERRED IN ITS INTERPRETATION OF R.C. §153.64(D), WHEN IT CONSTRUED THE STATUTE TO MEAN THAT APPELLANT WAS RESPONSIBLE FOR DAMAGES TO APPELLEE'S GAS LINE, DESPITE HAVING FOUND THAT APPELLEE HAD FAILED TO MARK ITS GAS LINES IN ACCORDANCE WITH THE MANDATORY PROVISIONS OF R.C. §153.64(C)."

II

{¶5}    "THE TRIAL COURT ERRED IN HOLDING THAT UNDER THE PROVISIONS OF R.C. §153.64, THE COMPARATIVE NEGLIGENCE OF APPELLEE WAS IRRELEVANT."

I

{¶6} Appellant claims the trial court erred in granting judgment to appellee. We disagree.

{¶7} Specifically, appellant argues the trial court's finding that it had "actual notice" was incorrect as "actual notice" under R.C. 153.64(D) must be narrowly construed. Said statute states the following in pertinent part:

{¶8} "(C) The contractor to whom a contract for a public improvement is awarded or its subcontractor, at least two working days, excluding Saturdays, Sundays, and legal holidays, prior to commencing construction operations in the construction area which may involve underground utility facilities, shall cause notice to be given to the registered underground utility protection services and the owners of underground utility facilities shown on the plans and specifications who are not members of a registered underground utility protection service, in writing, by telephone, or in person. Where notice is given in writing by certified mail, the return receipt, signed by any person to whom the notice is delivered, shall be conclusive proof of notice. The owner of the underground utility facility, within forty-eight hours, excluding Saturdays, Sundays, and legal holidays, after notice is received, shall stake, mark, or otherwise designate the location of the underground utility facilities in the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed. The marking or locating shall be coordinated to stay approximately two days ahead of the planned construction.

{¶9} "(D) If the public authority fails to comply with the requirements of division (B) of this section, the contractor to whom the work is awarded or its subcontractor

complies with the requirements of division (C) of this section, and the contractor or its subcontractor encounters underground utility facilities in the construction area that would have been shown on the plans and specifications for such improvement had the registered underground utility protection service or owner of the underground utility facility who is not a member of a registered underground utility protection service whose name, address, and telephone number is provided by the public authority been contacted, then the contractor, upon notification to the public authority, is entitled to an increase to the contract price for itself or its subcontractor for any additional work that must be undertaken or additional time that will be required and is entitled to an extension of the completion date of the contract for the period of time of any delays to the construction of the public improvement.

{¶10}  "***

{¶11}  "Any public authority who complies with the requirements of division (B) of this section and any contractor or its subcontractor who complies with the requirements of division (C) of this section shall not be responsible to the owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with the provisions of division (C) of this section by the owner of the underground utility facility, unless the contractor or its subcontractor has actual notice of the underground utility facility.  Except as noted in this division, this section does not affect rights between the contractor or its subcontractor and the owner of the underground utility facility for failure to mark or erroneously marking utility lines.  The public authority shall not make as a requirement of any contract for public improvement any change in responsibilities between the public authority and the owners of the underground utility

facilities in connection with damage, injury, or loss to any property in connection with underground utility facilities."

{¶12} In its judgment entry filed June 18, 2010, the trial court included the following interpretation of the evidence vis-à-vis R.C. 153.64(D):

{¶13} "The statute does not require the contractor to have actual knowledge of the specific location of the utility in order to be responsible for the damaged line. A contractor only needs to have actual notice 'of the underground utility facility'. In this situation, it is not a matter of OUPS mis-marking the gas line and the contractor hitting the line in relying on the recently placed markings. Here there were no markings made after the most recent request by the contractor. Yet, the contractor relied on OUPS lack of markings as determining no gas line existed. No confirmation was made as to whether OUPS or Southeastern did appear and not mark. Certainly, the responsibility and duty lies with the contractor to ensure the lack of markings means no utilities; particularly since Mike Vititoe had knowledge from the plans of a gas line and he was told that there was a gas line albeit outside the work area and a permanent marker existed on the date of the accident and perhaps two permanent markers existed at the beginning of the project. Further, OUPS and or Southeastern had marked the lines at the beginning of the construction project."

{¶14} We note the trial court's decision is based upon its interpretation of the evidence. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent

and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993-Ohio-9.

{¶15} It is accepted that appellant's owner and president, Mike Vititoe, contacted the Ohio Utility Protection Service (hereinafter "OUPS") in compliance with R.C. 153.64(C) three times prior to the November 19, 2007 incident. T. at 230. The last call was on November 5, 2007. Id. Appellee's affiliate employee who was dispatched to the scene, Richard Spencer, testified on November 6, 2007, he was told via a telephone conversation with Kim Vititoe, appellant's office manager, that re-marking was not necessary. T. at 214-215, 298. Mrs. Vititoe disputed this testimony, but the gas line was not re-marked after Mr. Vititoe's November 5, 2007 call. T. at 296-298, 335.

{¶16} The gravamen of this case is whether appellant had "actual notice" of the location of the gas line. It is undisputed that Plaintiff's Exhibit 1, construction drawings from the pre-construction meeting, correctly delineated by standard right-of-way designation the location of the subject gas line. T. at 88-90, 124. Attending the pre-construction meeting were Mr. Vititoe, Jonathan Carey, construction inspector for Delaware County, Brian Dilley, capital improvements project engineer for Delaware County, and Jerry Owings, utility coordinator for Delaware County. T. at 90, 120-121. Mr. Carey and Mr. Dilley both testified the gas line was specifically discussed at this meeting. T at 92, 121-122, 149. At the site prior to the beginning of the project, permanent markers were in place to mark the location of the gas line. T. at 94, 125-126. After the incident, Mr. Carey measured the area of the gas line break and determined the plans were accurate as to where the gas line actually was located. T. at 100-101, 116; Plaintiff's Exhibit 1-A, Red X.

{¶17} Mr. Spencer testified prior to the start of construction, he marked the gas line on two occasions. T. at 205-209. Roger Osborne, an employee with Utility Technologies International, a company providing services to the pipeline business, testified when he was at the site on October 25 and 26, 2007, the gas line was completely marked with flags and Mr. Vititoe told him he knew where the gas line was, but needed the telephone lines located and marked. T. at 255-256.

{¶18} Mr. Vititoe refuted this testimony, claiming the engineer's measurements were off, he never had actual notice of the location of the gas line, and he never asked for the telephone lines to be marked. T. at 313, 332. Mr. Vititoe stated he was told no gas lines were in the way of the project. T. at 307-308. However, there is a semantic difference between "in the way of the project" and the digging of a sump hole to divert water from the bridge construction area. The gas line was ruptured during the digging of a sump hole to direct water away from the area so a bridge could be constructed. Mr. Vititoe insisted he had no notice of the gas line.

{¶19} Clearly, the trial court rejected Mr. Vititoe's account and accepted the testimony of the Delaware County employees, Mr. Carey and Mr. Dilley, as well as the testimony of Mr. Spencer and Mr. Osborne that the gas line had been clearly marked prior to November 5, 2007. Mr. Osborne even opined there was no room to place any more markers. T. at 255.

{¶20} Upon review, we concur with the trial court's finding that appellant's actual notice consisted of previous permanent markers and the delineation of the gas line on Plaintiff's Exhibit 1.

{¶21} Assignment of Error I is denied.

II

**{¶22}** Appellant claims the trial court erred in not adopting the doctrine of comparative negligence to its decision since the trial court found appellee did not mark the gas line in accordance with R.C. 153.64(C). We disagree.

**{¶23}** A strict interpretation of R.C. 153.64(D) establishes a complete defense for a utility if a contractor has actual notice, as it is necessary for a contractor to comply with the statute and be aware of utility lines before digging and causing damage and/or injury. Therefore, comparative negligence principles are inapplicable.

**{¶24}** Assignment of Error II is denied.

**{¶25}** The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Farmer, P.J.

Edwards, J. and

Delaney, J. concur.

_s/ Sheila G. Farmer_____

_s/ Julie A. Edwards_____

_s/ Patricia A. Delaney_____

JUDGES

SGF/sg 325

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT


SOUTHEASTERN NATURAL GAS       :
COMPANY                                   :
                                                :
      Plaintiff-Appellee               :
                                                :
-vs-                                       :             JUDGMENT ENTRY
                                                :
VITITOE CONSTRUCTION, INC.       :
                                                :
      Defendant-Appellant         :           CASE NO. 10CAE070053


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


_s/ Julie A. Edwards_____


_s/ Patricia A. Delaney_____

JUDGES